UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 6:18-CR-008-CHB |
| ) | |
| v. ) | |
| ) | **ORDER ADOPTING MAGISTRATE** |
| SCOTT JAMES CARRENDER, ) | **JUDGE'S RECOMMENDED** |
| ) | **DISPOSITION** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendant's Objection to Recommended Disposition [R. 54]. Judge Ingram's Recommended Disposition [R. 53] recommended that the Court deny the Defendant's Motion to Suppress. The Motion to Suppress seeks to exclude evidence resulting from a search of the Defendant's automobile conducted after his arrest. The matter is now ripe for the Court's review. This Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections are made. 28 U.S.C. § 636(b)(1). Because the Court perceives no fault with the Magistrate Judge's analysis, and because the Defendant's objection fails to rebut (and in many instances fails to address) the reasoning of the Magistrate Judge, the Recommended Disposition will be accepted as the opinion of the Court.

After conducting an evidentiary hearing on May 16, 2019, Magistrate Judge Ingram filed a Recommended Disposition, which properly found that there was no basis for exclusion of the evidence in question. The Defendant made a series of objections claiming that Judge Ingram erred in so finding. The main thrust of these arguments is that law enforcement officers did not have probable cause permitting them to search the Defendant's vehicle until after they arrested

him (if ever), and that since the arrest was the purpose of the stop, searching the vehicle after the Defendant's arrest was unlawful. The Defendant's specific objections are addressed in turn below.[1]

## I. Objections
### A. Incorporation by Reference

To start, the Defendant purports to "adop[t], reiterate[e], and incorporate[e] by reference his Motion to Suppress and Post Evidentiary Hearing Brief in Support thereof, along with the Exhibit and Witness List from the evidentiary hearing and two of his exhibits presented at that hearing. [R. 54 at p. 2] This general reference to prior briefs and evidence put on at the evidentiary hearing fails to show the Court what portions of the Magistrate Judge's Recommended Disposition it must specially consider, "thereby making the initial reference to the magistrate useless." *Cline v. Myers*, 495 F. App'x 578, 580 (6th Cir. 2012) (citation omitted). The Sixth Circuit has explained that "the district court need not provide *de novo* review where the objections are '[f]rivolous, conclusive or general.' The parties have 'the duty to pinpoint those portions of the magistrate's report that the district court must specially consider.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal citations omitted). A general objection to a magistrate judge's recommended disposition is treated as a failure to object, *Cline*, 495 F. App'x at 580 (citation omitted), and the Court need not review a magistrate judge's findings when no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150-52 (1985). The Court declines to comb through the Defendant's previous briefs or the evidence presented at the evidentiary hearing in search of arguments to rebut the Recommended Disposition.

---

[1] The Magistrate Judge ably laid out the relevant facts in the Recommended Disposition. Rather than reviewing all these facts anew, the Court will address the facts of this case only to the extent necessary to rule on the objections to the Recommended Disposition.

### B. Objections Concerning Testimony Relating to Reasonable Suspicion of Drug Trafficking

Defendant objects that the Recommended Disposition did not adequately consider several pieces of "key testimony" showing "that no reasonable suspicion existed, developed or was discovered *prior to the completion* of the underlying purpose or tasks tied to the traffic stop and the immediate arrest, seizure, handcuffing and detention of [Defendant]." [R. 54 at p. 2 (emphasis original)] Specifically, the Defendant first objects that 1) "the confidential informant did not observe [Defendant] sell eleven ounces of methamphetamine inside a room at the Parkland Motel," 2) the confidential informant did not "name the motel as being the Parkland Motel," and 3) "the testimony at the Evidentiary Hearing did not state that the confidential informant saw [Defendant] selling drugs in the motel room." [R. 54 at p. 3]

The Court finds these objections to be without merit. The testimony at the evidentiary hearing was that the confidential informant told law enforcement that he saw a person selling drugs in a motel room which officers identified through other means as Defendant's room at the Parkland Motel. Magistrate Judge Ingram recognized that the confidential informant did not identify Defendant specifically, stating that the confidential informant told law enforcement that he saw "a person" inside a room in the Parkland Motel sell methamphetamine [R. 53 at p. 2 (*citing* R. 46 at pp. 7-8)]. However, the Magistrate Judge further recognized that additional facts (specifically, motel staff's information that the room described by the confidential informant had been rented by Defendant) led police to identify this person as Defendant. [R. 53 at *id.* (*citing* R. 46 at pp. 10-11)] While the Recommended Disposition does not specifically discuss how law enforcement came to identify the motel in question, Wayne County Sheriff's Deputy Joseph Alan Horne testified at the evidentiary hearing that there are only two or three motels in the county where the confidential informant stated the drugs were sold, and that law enforcement

determined that the described motel "could possibly be the Parkland Motel." [R. 46 at p. 8] Deputy Horne testified that the confidential informant, though not sure exactly what room it was, described the motel room as being "on the first floor on the bottom. If you're coming off the main road, turning in facing . . . the motel, it was on the left hand side toward the far end." [R. 46 at p. 9] Deputy Horne further testified that Parkland Motel staff told an officer "that one of the rooms were rented in that area that was described" and that it was rented by Defendant. *Id.* at p. 10. Defendant does not explain why it matters that the confidential informant did not specifically identify the Parkland Motel given these circumstances, which were enough to allow the officers to determine which motel room the confidential informant was describing.

Defendant next objects that, while a critical fact discussed as underlying the reasonable suspicion that Defendant's car contained evidence of drug trafficking was that the truck driven by the person who visited Defendant at his motel room that evening was found to contain methamphetamine, "it is unclear from the Record at hand if the person who was driving the truck actually possessed the suspected methamphetamine prior to arrival and eventual departure from the motel."[2] *Id.* at p. 4. However, the mere possibility that this person (David Shane Upchurch) had possessed the drugs *before* visiting Defendant's motel room certainly does not mean that law enforcement could not reasonably suspect that he had instead obtained them *during* that visit, particularly given the confidential informant's testimony that a person in Defendant's motel room had sold the same drugs to others. The Defendant does not demonstrate otherwise.

Defendant states that Kentucky State Police Trooper Harrison Wells' testimony at the evidentiary hearing shows that "it is undocumented in the Uniform Citation that Mr. Upchurch made any reference about a statement implicating [Defendant]'s involvement in any illegality;

---

[2] The Defendant does not seem to dispute that there is testimony that Deputy Horne observed the person visit Defendant's motel room.

there is nothing in the Uniform Citation suggesting that Mr. Upchurch stated that he had purchased methamphetamine from [Defendant]; and the Uniform Citation documents that Mr. Upchurch declined an audio-recorded interview." *Id.* at p. 5. But none of those arguments negate the fact that methamphetamine was found in Upchurch's truck right after Upchurch was seen visiting the Defendant's motel room. That Upchurch did not confess to drug trafficking does not change that.

The Defendant next quibbles with the Magistrate Judge's characterization that law enforcement observed "a Crown Royal bag with 'cash' protruding in the back of Defendant's car." *Id.* at p. 6. He seems to be arguing that the evidence showed that the bag held coins and not paper bills. *Id.* It is unclear exactly what significance the Defendant is trying to draw from this alleged discrepancy. In any event, the Court finds that this is neither a fair characterization of the evidence, nor relevant even if it were.

Defendant points to Defense Exhibits 1 (an "Evidence/Recovered Property" form from his arrest and search, hereinafter, "report") and 2 (a photograph of money and drugs) from the evidentiary hearing, along with the United States' exclusive use of the word "cash" during the hearing, and Deputy Horne's testimony regarding the notation on the report regarding the Crown Royal bag. As to the exhibits, the Defendant does not clearly explain (and the Court does not see) how they contradict the officers' testimony that after they stopped Defendant but before they arrested him or searched the car, Wayne County Sheriff's Deputy Bradley Shawn Tucker observed "cash" protruding from the bag. The photograph merely portrays drugs and money neatly laid out after their discovery by police. The report notes a "Black and gold Crown Royal bag cloth bag [containing] approx.. $59.47 in US currency coins" as well as US currency in the

form of $1, $5, $10, $20, and $100 bills. Deputy Horne testified as follows under cross-examination regarding the evidence noted on the report:

> Q. What is item number 14?
>
> A. A black and gold Crown Royal bag . . . cloth, containing approximately $59.47 in U.S. currency coins.
>
> Q. So Crown Royal bag actually had coins in it, correct, not money, not bills?
>
> A. I guess it had coins in it **also**, yeah.

[R. 46 at p. 50 (emphasis added)] The word "also," of course, implies that the bag had both coins and bills in it. Deputy Horne further agreed on redirect examination that there was "other cash" in the Crown Royal bag besides the U.S. currency coins noted in the report:

> Q. And on the second page, defense counsel called your attention to item 14, the Crown Royal bag with the U.S. currency coins. Does your report – did you intend by your report to suggest that those were the – that was the only money that was ever in the Crown Royal bag?
>
> A. No, sir.
>
> Q. All right. Was there in fact other cash in the bag?
>
> A. Yes, sir.

[R. 46 at p. 56] Likewise, the fact that law enforcement officers repeatedly responded in the affirmative when asked at the evidentiary hearing if there was "cash" in or protruding from the bag is evidence that they did, in fact, see "cash" in the bag prior to and during or after the search – certainly not evidence to the contrary. [*Contra* R. 54 at p. 6; R. 46 at pp. 56, 70, 71]

Even if the Court were to find that the evidence in fact demonstrated that this bag had only coins and not paper money in it, the Court fails to see the significance of the distinction for purposes of the probable cause analysis. Deputy Tucker testified that "[i]n the rear passenger floorboard, I observed a Crown Royal bag with U.S. currency sticking out the top"; agreed that he had come across Crown Royal bags in other drug investigations; testified that he had seen

"[a]nything from money to drug paraphernalia to drugs" in such bags; and agreed that he "observe[d] the Crown Royal bag with the cash sticking out of it before conducting any search of the vehicle." [R. 46 at pp. 69-70]  Deputy Horne likewise testified that Crown Royal bags make him suspicious because in his 16 or 17 years of experience in law enforcement, officers find "drugs, drug paraphernalia, money, [and] items like that contained in those bags" and that he has "seen it several times over the years."  [R. 46 at p. 51]

In light of all of this testimony, the Court does not see any reason why it matters what type of U.S. currency was in the bag.  The Defendant pointed to no testimony showing that law enforcement officers' suspicions of Crown Royal bags hinge on what type of currency is hanging out (or even that it hinges on whether they have currency hanging out of them at all).  The point is that prior to the search, Deputy Tucker saw a Crown Royal bag, with *some* type of U.S. currency protruding from it, and that bags of this type raise the suspicions of law enforcement because they find drugs, drug paraphernalia, and "money" in these bags.  Having seen a Crown Royal bag containing money (of whatever type) in the Defendants car, and in light of their experience with finding contraband in such bags, as well as all the other evidence discussed herein (the confidential informant's statement, the drugs found in Upchurch's truck, the Defendant's apparent attempt to hide something after being stopped) it was reasonable for officers to infer that the bag might also contain drugs and drug paraphernalia.

For all of these reasons, the Defendant's attempt to raise doubt as to exactly what type of money Deputy Tucker saw in the bag does not convince the Court that the bag could not have contributed to probable cause to search Defendant's vehicle.  Further, the Court notes that the Defendant has not shown (and did not argue) that the Crown Royal bag was the critical fact underlying any probable cause to search the Defendant's vehicle, such that without the

observation of the bag, officers could not have probable cause. This further demonstrates that this objection does not show error in the Recommended Disposition.

### C. Objections Regarding Alleged Extension of Stop Absent Reasonable Suspicion

Next, the Defendant argues essentially that although the initial stop was legal, the purpose of that stop was to arrest him on an outstanding warrant, and since the evidence shows that this purpose was fulfilled immediately after he was stopped, the subsequent search of the car unlawfully prolonged the stop beyond the time reasonably required to complete the mission of the stop, in violation of *Rodriguez v. U.S.*, 135 S.Ct. 1609 (2015). [R. 54 at p. 17, 7, 14-16, 17-21]

However, this objection ignores the analysis of Magistrate Judge Ingram that *Rodriguez* and other extended-stop cases are irrelevant because of the factual distinctions between such cases and this case. The Recommended Disposition explained that *Rodriguez* concerns situations where "officers delay a traffic stop premised on a moving violation in order to gather evidence to justify an arrest," where in this case, "the arrest was immediate, and officers needed no post-stop evidence in order to make the arrest." [R. 53 at pp. 5-6] This objection further fails because, as the Magistrate Judge noted, even if *Rodriguez* were relevant here, its requirements would be met. [*See* R. 53 at p. 6] As the Defendant notes, under the extended-stop cases, "[o]nce the purpose of the traffic stop is completed, a motorist cannot be further detained unless something occurred during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot." [R. 54 at p. 15 (quoting *U.S. v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). But as explained by Magistrate Judge Ingram, something *did* occur during the stop to cause officers to have just such reasonable and articulable suspicion that criminal activity was afoot: the observations that the Defendant was trying to hide something and that his vehicle

contained a Crown Royal bag with money protruding out of it. [R. 53 at pp. 6-7] The Court agrees with the Recommended Disposition that when combined with the facts which the officers already had before stopping Defendant's vehicle and which gave them reasonable suspicion of drug trafficking (the information from the confidential informant regarding the drug sale out of Defendant's room and the presence of methamphetamine in Upchurch's truck after visiting Defendant's room), these observations gave the officers probable cause to search Defendant's car for evidence of drug trafficking. *See Fla. v. Harris*, 568 U.S. 237, 243–44 (2013) ("A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present. . . . All we have required is the kind of fair probability on which reasonable and prudent people, not legal technicians, act." (internal quotation marks and brackets omitted)).

### D. Objections Regarding the Scope of the Search

Defendant reiterates his argument from his post-hearing brief that pursuant to *Arizona v. Gant*, 556 U.S. 332 (2009), officers could only search his car for "evidence likely to be related to the fruits of his arrest on the Kentucky Parole Board Warrant" because at the time of the search, Defendant was handcuffed in the back of a police car with no ability to reach his vehicle. [R. 47 at p. 3, n. 9; R. 54 at p. 16, n. 37] He similarly cites *Gant* in arguing that the search was unlawful because searches incident to arrest are only permissible if "it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest," and neither was true here. *Id.* at p. 30. These arguments are unresponsive to the Magistrate Judge's explanation that "Defendant's argument ignores other language in *Gant* which states that a vehicle may be searched incident to arrest '[i]f there is probable cause to believe a vehicle contains evidence of criminal activity.' In such cases, officers may search 'any

area of the vehicle in which the evidence might be found'" and that "the *Gant* Court explained that '*Ross* allows searches for evidence relevant to **offenses other than the offense of arrest**, and the scope of the search authorized is broader.'" [R. 53 at pp. 8-9 (quoting *Gant*, 556 U.S. at 347) (citations omitted) (emphasis added)] Since – as explained above – there was probable cause to believe Defendant's vehicle contained evidence of criminal activity, *Gant* provides no basis to find error in the Recommended Disposition.

### E. Objections Regarding Application of Exclusionary Rule

Defendant further argues that "the officers committed flagrant misconduct in illegally searching his vehicle," meaning that the good-faith exception does not apply. [R. 54 at p. 16] However, Defendant does not clearly explain why the officers' conduct – even if it did amount to an illegal search – rose to the level warranting exclusion. He argues (perhaps in support of the argument for exclusion) that testimony at the evidentiary hearing "is abundantly clear that no law enforcement officer involved with [Defendant's] traffic stop and resulting arrest knows when calls were made from Deputy Horne to Deputy Bell and/or possibly Deputy Tucker on October 2, 2017, coupled with the fact that Deputy Horne's phone has since been lost or otherwise destroyed" and that "valuable, potentially exculpatory evidence has forever been lost." [R. 54 at pp. 16-17] He also cites "the fact that none of these officers appear to have utilized Official Police Dispatchers or Radios that would have maintained Official Time Logs/Radio Transmission Records," and connects this fact to his argument that the stop was unlawfully prolonged in violation of *Rodriguez*. [R. 54 at p. 17] He then reiterates his arguments that pursuant to the extended-stop caselaw, traffic stops may not be prolonged once the purpose of the stop is completed unless there is reasonable and articulable suspicion that criminal activity was afoot. *Id.* at pp. 17-18.

The Court finds these arguments to be unconvincing. The Court has already explained why there was no *Rodriguez* violation; accordingly, the timing of the calls between the deputies and the lack of official time logs or radio transmission records appears to be irrelevant. As to the fact that Deputy Horne's phone has been lost or destroyed, the Defendant simply fails to explain what was or might have been on the phone, much less the potential exculpatory value of those contents. The Defendant also does not point to evidence of deliberate police misconduct in losing the phone. Accordingly, the Court is not convinced that – even if the search had been illegal – application of the exclusionary rule would be warranted.

The Defendant repeats his argument that the lack of "'context framing questions' or similar 'stop-query-ticket' chronology of events type inquiries [sic]," distinguishes this case from *U.S. v. Mason*, No. 3:17-CR-173-CHB, 2018 WL 4053385 (W.D. Ky. Aug. 24, 2018), *U.S. v. Collazo*, 818 F.3d 247 (6th Cir. 2016) and *U.S. v. $38,005.00 in U.S. Currency*, No. 5:15-CV-27-REW, 2016 WL 3545427 (E.D. Ky. June 22, 2016). [R. 47 at p. 47; R. 54 at p. 18] It is unclear what point the Defendant is trying to make with this argument, since he does not explain the significance of distinguishing these cases. In any event, the Recommended Disposition did not cite to the *Mason* case or the *$38,005.00 in U.S. Currency* case at all, and cited *Collazo* merely to explain where the *Rodriguez* analysis applies and to illustrate the reasonable suspicion standard. Thus, this bare assertion shows no error in the Recommended Disposition.

### F. Objections Regarding Contents of Uniform Citation

As in his post-hearing brief, the Defendant argues in his objection that the Uniform Citation[3] is relevant to this case. Specifically, he argues that the fact that the Uniform Citation does not reference "the existence, development or discovery of any reasonable suspicion to

---

[3] Apparently meaning the Uniform Citation issued to Defendant, not the one issued to Upchurch (discussed above).

investigate any further criminality, *prior to* the completion of the underlying purpose or tasks tied to the traffic infractions investigation" goes to the reliability of evidence and credibility of testimony presented at the evidentiary hearing. [R. 54 at pp. 18-19 (emphasis original)] He argues that while the Recommended Disposition suggests that Defendant has not cited any specific authority showing the relevance of the contents of the traffic citation, the traffic citation is "relevant to test the reliability of the evidence presented at Evidentiary Hearings and to help assist the Court and/or fact finder in judging the recollection, reliability and credibility of" witnesses and that "such official documents are often used for impeachment purposes at Evidentiary Hearings and even Trials." [R. 54 at p. 19]

However, Defendant still does not cite to any authority demonstrating the relevance of the contents of the traffic citation. He makes passing reference to the fact that the Uniform Citation is part of the official record of an underlying state court case. [R. 54 at pp. 18, 19] However, he fails to explain why that means it is relevant and helpful. He mentions that "such official documents are often used for impeachment purposes," but that hardly advances any of his arguments that the evidence at issue should be suppressed. Even to the extent that these statements could be read as an argument that the Court should disbelieve the testimony of the officers who testified at the evidentiary hearing because they testified to things that were not contained within the Uniform Citation, the Court does not find this persuasive.

### G. Miscellaneous Objections

Similarly, Defendant makes passing references to arguments that "the officer's [sic] conduct was unreasonable and lacking in diligence." [R. 54 at pp. 20, 22] The Court is not convinced by this undeveloped statement. Defendant next repeats his argument that the stop was a pretext to perform a drug investigation, and that "[a]s such, there can be no argument of good

faith based upon these facts." [R. 47 at p. 15; R. 54 at p. 28] However, this completely ignores the Magistrate Judge's explanation that it is legally irrelevant whether the stop was pretextual. [R. 53 at p. 9]

Defendant rebuts the Recommended Disposition's statement that Defendant's "post-hearing brief completely ignores [the] evidence of drug trafficking which the officers possessed prior to stopping Defendant's vehicle" by stating that "as was discussed previously . . . the testimony at the Evidentiary Hearing did not state that the confidential informant saw [Defendant] selling drugs in the motel room." [R. 54 at pp. 28-29 (quoting R. 53 at p. 6)] These arguments have already been addressed above, and this objection provides no basis for finding error in the Recommended Disposition.

Finally, the Defendant repeats his argument that the exclusionary rule should be applied in furtherance of the goal of deterring constitutional violations, despite the high cost of letting obviously guilty persons go unpunished. [R. 47 at pp. 15-16; R. 54 at p. 30] Yet again, this is totally unresponsive to the Recommended Disposition's analysis that there is no evidence of flagrant misconduct meriting exclusion here, even if the Court were to find that the search of the vehicle violated the Fourth Amendment. [*See* R. 53 at p. 12]

## II. Conclusion

For all the reasons outlined above, the Court finds no error in the Recommended Disposition. The Magistrate Judge correctly found that the search of the Defendant's vehicle was legal and that there is nothing warranting exclusion. That being the case, the Court need not address the Defendant's arguments regarding exclusion of other evidence that he claims constitute "fruits of the poisonous tree." [*Contra* R. 54 at pp. 1; 2, n.2; 16]

Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The **Recommended Disposition** [**R. 53**] is **ADOPTED** and is entered as the findings and conclusions of the court.

2. The Defendant's **Objection to Recommended Disposition** [**R. 54**] is **OVERRULED**.

3. The Defendant's **Motion to Suppress** [**R. 28**] is **DENIED**.

4. The time between **April 2, 2019,** (the date of the filing of the Motion to Suppress) and **August 12, 2019**, (the date of the order adopting the Recommended Disposition denying the Motion to Suppress) is **DECLARED** excludable in computing the time within which the trial must commence under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D); (h)(1)(H). The Court **FINDS** that the period of delay resulted from a pretrial motion concerning the Defendant (along with a delay reasonably attributable to a period less than thirty days during which that proceeding was actually under advisement by the Court) and is therefore excludable pursuant to 18 U.S.C. § 3161(h)(1)(D); (h)(1)(H).

This the 12th day of August, 2019.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY